Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/29/2017 09:12 AM CDT

DAWN McGAULEY, AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF JAMES E. McGAULEY, DECEASED,
APPELLANT, v. WASHINGTON COUNTY, A CORPORATION
AND POLITICAL SUBDIVISION OF THE STATE OF
NEBRASKA, AND MARTIN MARIETTA
MATERIALS, INC., APPELLEES.

___ N.W.2d ___

Filed July 7, 2017.    No. S-16-897.

1. **Political Subdivisions Tort Claims Act: Appeal and Error.** A district court's findings of fact in a proceeding under the Political Subdivisions Tort Claims Act will not be set aside unless such findings are clearly erroneous.

2. **Administrative Law: Statutes: Appeal and Error.** To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

3. **Political Subdivisions Tort Claims Act: Immunity: Waiver.** The Political Subdivisions Tort Claims Act provides limited waivers of sovereign immunity, which are subject to statutory exceptions.

4. **Political Subdivisions Tort Claims Act.** The discretionary function exception of the Political Subdivisions Tort Claims Act extends only to basic policy decisions made in governmental activity at the operational level, and not to ministerial activities implementing such policy decisions.

5. ____. The purpose of the discretionary function exception of the Political Subdivisions Tort Claims Act is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

6. ____. To determine whether the discretionary function exception of the Political Subdivisions Tort Claims Act applies, the Nebraska Supreme

Court has set out a two-step analysis. First, a court must consider whether the action is a matter of choice for the acting employee. Second, if the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exception was designed to shield.

7. ____. The discretionary function exception of the Political Subdivisions Tort Claims Act does not apply when the governmental entity has a non-discretionary duty to warn or take other protective measures that may prevent injury as the result of the dangerous condition or hazard.

8. **Political Subdivisions: Negligence.** A nondiscretionary duty to warn or take other protective measures exists when (1) a governmental entity has actual or constructive notice of a dangerous condition or hazard caused by or under the control of the governmental entity and (2) the dangerous condition or hazard is not readily apparent to persons who are likely to be injured by the dangerous condition or hazard.

Appeal from the District Court for Washington County: John E. Samson, Judge. Affirmed.

David A. Domina and Christian T. Williams, of Domina Law Group, P.C., L.L.O., for appellant.

Robert S. Keith and Philip O. Cusic, of Engles, Ketcham, Olson & Keith, P.C., for appellee Washington County.

Tiernan T. Siems and Karen M. Keeler, of Erickson & Sederstrom, P.C., for appellee Martin Marietta Materials, Inc.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Kelch, J.

## NATURE OF CASE

This case involves a wrongful death action brought against Washington County (the County) for the death of James E. McGauley, a quarry worker who was killed while operating a dump truck on a road being built up by his employer, Martin Marietta Materials, Inc. (Marietta), on behalf of the County. The issue concerns whether the County had

sovereign immunity under the discretionary acts exclusion of the Political Subdivisions Tort Claims Act (PSTCA).[1]

## FACTS

On May 31, 2011, the State of Nebraska and the Washington County Highway Superintendent (the Superintendent) declared a disaster because of severe flooding from the Missouri River. The County assigned the majority of its road construction staff to build a road providing access to a residential subdivision, while the remaining staff assisted with general measures to mitigate flood damage in the area. On June 3, the County formed an emergency flood subcommittee (the Subcommittee).

Marietta operated the only quarry in the County, and in early June 2011, the Army Corps of Engineers informed Marietta that the quarry was in imminent danger of flooding. County-owned road CR P30 was the only access road to the quarry for truck traffic. CR P30 allowed Marietta to provide quarry materials to combat the flooding in other parts of the County. This road, nearly a mile long, provided a barrier between the floodwaters and the quarry. Unless the road were raised or some other action were taken, floodwaters would overtake the quarry, halting any work there.

On June 6, 2011, a representative of Marietta contacted the Superintendent, seeking permission to raise the height of CR P30. The Superintendent gave permission to undertake the project but advised the representative that the Subcommittee would have to approve it. Later that day, the Subcommittee met. Because the County lacked the resources and equipment to raise the road, the Subcommittee granted Marietta an oral easement to raise the road. A formal easement and an indemnification agreement were signed on June 13.

At the bench trial, members of the Subcommittee testified that they orally agreed to allow Marietta to take on the

---

[1] Neb. Rev. Stat. § 13-910(2) (Reissue 2012).

project under the express condition that Marietta accept full responsibility. However, Marietta's representative denied any discussion of liability.

CR P30's construction was subject to Mine Health Safety Administration regulations. Marietta had experience building roads to those regulations' standards within its quarry. To comply with the standards, Marietta took numerous safety precautions, including installing lights to provide partial illumination in the dark, placing 3-foot berms (raised rows of gravel and dirt) on each side of the road to warn drivers where the soft shoulder of the road began, and holding daily safety meetings before each shift. At the daily safety meetings, Marietta drivers were advised that the softness of the shoulders increased the probability of collapse. They were told to stay off the shoulders and to approach the berms slowly.

McGauley's accident occurred around 4:45 a.m. on June 9, 2011. By June 9, the road had been built 6 to 7 feet. While backing up to dump a load of rock, McGauley drove off the road onto the shoulder. The shoulder collapsed, and the truck flipped upside down into the floodwaters below. McGauley drowned. Because of the work being conducted on that part of road, there was no berm where McGauley's accident occurred.

The County was not involved in the effort to build up CR P30. No one from the County provided instruction, assistance, or supervision. Following the June 6, 2011, meeting wherein the County granted the oral easement for Marietta to build up CR P30, the Superintendent considered the matter "out of [her] hands." Nevertheless, she admitted that the County remained responsible for maintaining CR P30. She acknowledged that the County had previously exercised its municipal authority to clarify that it controlled CR P30 to Marietta's predecessor.

At trial, the Superintendent testified that she visited the worksite twice and recognized that the construction of CR P30 did not meet County standards. She also testified that a road

foreman for the County went to the worksite to observe, but that she did not send him and he was not involved in the work. The Superintendent testified that the County did not put any lighting, warning signs, or reflective delineators on the work-site during the week of June 6, 2011.

After McGauley's death, the personal representative of his estate, Dawn McGauley, brought a wrongful death action against Marietta and the County. The County raised sovereign immunity as an affirmative defense and brought a cross-claim against Marietta. After a bench trial exclusively on the issue of sovereign immunity, the district court ruled that the discretionary function exception of the PSTCA applied, and therefore, the County had sovereign immunity. The district court dismissed the County's cross-claim against Marietta. The personal representative of McGauley's estate now appeals.

## ASSIGNMENT OF ERROR

The personal representative of McGauley's estate assigns, combined and restated, that the district court erred in dismissing her claims against the County on the ground that the County was protected by sovereign immunity.

## STANDARD OF REVIEW

[1] A district court's findings of fact in a proceeding under the PSTCA will not be set aside unless such findings are clearly erroneous.[2]

[2] To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[3]

---

[2] See *Mix v. City of Lincoln*, 244 Neb. 561, 508 N.W.2d 549 (1993).

[3] *Cotton v. State*, 281 Neb. 789, 810 N.W.2d 132 (2011).

## ANALYSIS

[3] The PSTCA provides limited waivers of sovereign immunity, which are subject to statutory exceptions.[4] If a statutory exception applies, the claim is barred by sovereign immunity.[5]

[4,5] Here, we are concerned with the statutory exception provided by § 13-910(2), which is commonly known as the discretionary function exception. Under that exception, the PSTCA shall not apply to "[a]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused."[6] We have said that the discretionary function exception extends only to basic policy decisions made in governmental activity at the operational level, and not to ministerial activities implementing such policy decisions.[7] The purpose of the discretionary function exception is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.[8]

[6] To determine whether the discretionary function exception applies, we have set out a two-step analysis.[9] First, the court must consider whether the action is a matter of choice for the acting employee.[10] Second, if the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the

---

[4] *Shipley v. Department of Roads*, 283 Neb. 832, 813 N.W.2d 455 (2012).

[5] *Id.*

[6] § 13-910(2).

[7] See *Shipley, supra* note 4.

[8] *Kimminau v. City of Hastings*, 291 Neb. 133, 864 N.W.2d 399 (2015).

[9] *Id.*

[10] *Id.*

kind that the discretionary function exception was designed to shield.[11]

[7,8] Here, a third step is also involved. The personal representative of McGauley's estate contends that the County had a nondiscretionary duty to provide a safe work environment. We have held that the discretionary function exception does not apply when the governmental entity has a "'nondiscretionary duty to warn . . . or take other protective measures that may prevent injury as the result of the dangerous condition or hazard.'"[12] Such a duty exists when

"(1) a governmental entity has actual or constructive notice of a dangerous condition or hazard caused by or under the control of the governmental entity and (2) the dangerous condition or hazard is not readily apparent to persons who are likely to be injured by the dangerous condition or hazard . . . ."[13]

Turning to the first step in determining whether the discretionary function exception applies, we conclude that the challenged conduct at issue here involves an element of judgment at the policymaking level. When confronted with the emergency situation of the flooding, and in light of its lack of resources, the County was effectively forced to choose between two less-than-ideal options: It could either (1) allow CR P30 to flood and Marietta to go out of business or (2) grant Marietta an easement and allow Marietta to use its resources to build up CR P30. The County chose the latter option.

Turning to the second step, we conclude that the judgment discussed above is clearly the kind that the discretionary function exception was designed to shield. The County's decision to allow Marietta to build up CR P30 involved balancing the competing needs of commerce, retaining access to supplies needed to combat the flood in other areas, and flood

---

[11] *Id.*

[12] *Shipley, supra* note 4, 283 Neb. at 846, 813 N.W.2d at 466.

[13] *Id.* at 845-46, 813 N.W.2d at 465-66.

and road safety—all of which the County had to balance in light of the emergency situation and its limited resources. This decision was clearly the type of economic, political, and social policy judgment that the discretionary function exception was designed to shield.[14]

Although the personal representative of McGauley's estate concedes that the decision to allow Marietta to build up the road was a judgment that fell within the discretionary function exception to the PSTCA, she argues that the County's decisions not to supervise Marietta's work and not to enforce its own safety standards on Marietta were separate judgments that did not fall within the exception. We disagree.

The district court found, and the evidence supports, that the County did not have the resources to assist Marietta with the buildup. Supervising Marietta's work and enforcing its own safety standards on Marietta were simply not options for the County. Thus, to the extent that any *decision* was made not to supervise Marietta or enforce safety standards, it was part of the County's overall policymaking decision to allow Marietta to build up the road. Accordingly, the argument of the personal representative of McGauley's estate argument that these decisions were separate, nondiscretionary judgments is without merit.

Finally, we turn to the third step in our analysis: whether the County had a nondiscretionary duty to provide a safe working environment on CR P30. As noted above, a nondiscretionary duty to warn or take other protective measures exists when (1) the governmental entity has notice of a dangerous condition or hazard caused by or under the control of the governmental entity and (2) the dangerous condition or hazard is not readily apparent to persons likely to be injured by the dangerous condition.

Here, such a duty does not exist, because regardless of whether the first element was met, the district court found and

---

[14] See *McCormick v. City of Norfolk*, 263 Neb. 693, 641 N.W.2d 638 (2002).

we agree that the second element was clearly not met: The dangerous conditions present on CR P30 were not readily apparent to persons likely to be injured, i.e., the construction workers. As the district noted, Marietta workers were the persons likely to be injured by the dangerous conditions, and Marietta warned its workers of those conditions at safety meetings on several occasions prior to McGauley's accident. The evidence shows that at the safety meetings, drivers such as McGauley were specifically warned to stay off the soft shoulders and to approach them slowly. The workers were also trained to operate the heavy equipment safely, including driving slowly when required, using signals to communicate with other operators, and keeping proper lookout for hazards.

McGauley was also personally aware of the dangerous conditions. Not only had McGauley backed up and unloaded his dump truck dozens of times already on CR P30, but McGauley had attended the safety meetings where the warnings were given. The district court found that on the morning of the accident, McGauley had attended a safety meeting, wherein he was warned to keep equipment in the center of the road.

Given the evidence set forth above, the district court found that "the dangerous conditions presented by the CR P30 construction project . . . were readily apparent to the . . . Marietta workers, including . . . McGauley." Because of the evidence supporting this factual finding, we cannot say that such finding was clearly erroneous. Therefore, the County did not have a nondiscretionary duty to take protective measures, and McGauley's assignment of error is without merit.

## CONCLUSION

We find that the County's decision to allow Marietta to build up the road was a discretionary function, not subject to the PSTCA. Therefore, the County has sovereign immunity, and the district court's order dismissing McGauley's claims against it is hereby affirmed.

AFFIRMED.