Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/30/2019 09:08 AM CDT

Kathy Girard Williams, Ph.D., and Michael
Williams, appellants, v. City of Lincoln,
Nebraska, appellee.

___ N.W.2d ___

Filed July 23, 2019.    No. A-18-680.

1. **Judges: Recusal.** A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned.
2. **Judgments: Statutes: Appeal and Error.** Questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below.
3. **Political Subdivisions Tort Claims Act.** Whether the allegations made by a plaintiff present a claim that is precluded by exemptions set forth in the Political Subdivisions Tort Claims Act is a question of law.
4. **Political Subdivisions Tort Claims Act: Appeal and Error.** An appellate court has an obligation to reach its conclusion on whether a claim is precluded by exemptions set forth in the Political Subdivisions Tort Claims Act independent from the conclusion reached by the trial court.
5. **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
6. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.
7. **Judges: Recusal.** Under the Nebraska Revised Code of Judicial Conduct, a judge must recuse himself or herself from a case if the judge's impartiality might reasonably be questioned.

- 415 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

8. ____: ____. Under the Nebraska Revised Code of Judicial Conduct, such instances in which the judge's impartiality might reasonably be questioned specifically include where the judge has a personal bias or prejudice concerning a party or a party's lawyer.

9. **Judges: Recusal: Presumptions.** A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.

10. **Judges: Recusal: Waiver.** A party is said to have waived his or her right to obtain a judge's disqualification when the alleged basis for the disqualification has been known to the party for some time, but the objection is raised well after the judge has participated in the proceedings.

11. **Political Subdivisions Tort Claims Act: Waiver: Immunity.** The Political Subdivisions Tort Claims Act reflects a limited waiver of governmental immunity and prescribes the procedure for maintenance of a suit against a political subdivision.

12. **Political Subdivisions Tort Claims Act.** The Political Subdivisions Tort Claims Act is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees.

13. **Statutes: Immunity: Waiver.** Statutes that purport to waive the protection of sovereign immunity of the State or its subdivisions are strictly construed in favor of the sovereign and against the waiver.

14. **Political Subdivisions Tort Claims Act: Immunity: Waiver.** The Political Subdivisions Tort Claims Act provides limited waivers of sovereign immunity, which are subject to statutory exceptions.

15. **Political Subdivisions Tort Claims Act.** A court engages in a two-step analysis to determine whether the discretionary function exception of the Political Subdivisions Tort Claims Act applies. First, the court must consider whether the action is a matter of choice for the acting employee. Second, if the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exception was designed to shield.

16. ____. The purpose of the discretionary function exception of the Political Subdivisions Tort Claims Act is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

17. ____. The discretionary function exception of the Political Subdivisions Tort Claims Act does not apply when the governmental entity has a nondiscretionary duty to warn or take other protective measures that may prevent injury as the result of the dangerous condition or hazard.

18. **Political Subdivisions Tort Claims Act: Negligence.** A nondiscretionary duty to warn or take other protective measures exists when (1) a

- 416 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

governmental entity has actual or constructive notice of a dangerous condition or hazard caused by or under the control of the governmental entity and (2) the dangerous condition or hazard is not readily apparent to persons who are likely to be injured by the dangerous condition or hazard.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed.

Jerry W. Katskee and Thomas C. Dorwart, of Govier, Katskee, Suing & Maxell, P.C., L.L.O., for appellants.

Jeffery R. Kirkpatrick, Lincoln City Attorney, Elizabeth D. Elliott, and Margaret M. Blatchford for appellee.

Riedmann, Arterburn, and Welch, Judges.

Riedmann, Judge.

## INTRODUCTION

Kathy Girard Williams and Michael Williams appeal the order of the district court for Lancaster County which entered summary judgment in favor of the City of Lincoln, Nebraska (the City), based on the court's determination that the Williamses' claims against the City were barred by sovereign immunity. We affirm.

## BACKGROUND

On September 13, 2015, the Williamses were riding their bicycles on a sidewalk owned by the City. Shortly past an intersection, a row of pear trees lined the median between the sidewalk and the street. Michael was riding in front of Kathy, and the pair rode past the first three trees without incident. The branches of the fourth tree, however, extended over the sidewalk. Michael was approximately 20 to 30 feet away when he noticed the overgrown tree. Michael yelled back to warn Kathy of the tree up ahead and successfully veered to the side and around the tree, but Kathy, who was riding approximately 5 to 10 feet behind Michael, collided with the low-hanging

- 417 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

branches of the tree, was knocked off her bicycle, and sustained serious injuries.

The Williamses filed a tort claim with the City pursuant to the Political Subdivisions Tort Claims Act (PSTCA), Neb. Rev. Stat. § 13-901 et seq. (Reissue 2012), seeking damages in the amount of $1 million. The City rejected the claim. The Williamses then filed a complaint in the district court. The complaint alleged that Kathy's injuries were the result of the City's negligent failure to properly prune and maintain the tree with which Kathy collided.

The City filed an answer, which asserted, among other things, that it was immune from suit due to sovereign immunity. The City subsequently filed a motion for summary judgment.

The evidence received at the hearing on the motion for summary judgment establishes that there are 81,785 "street trees" under the care of the City's parks and recreation department and another 30,505 trees located in the City's parks. The tree at issue here is considered one of the "street trees."

The City's municipal code requires that the City maintain "street trees." See Lincoln Mun. Code § 12.20.030 (2003). The city charter provides that the city council shall have the power to provide for the removal or trimming of trees located along the streets or public ways, including the sidewalk space, and to trim the branches of trees overhanging them. In response to these requirements, the City's parks and recreation department created the community forestry division, which is responsible for the care and management of all public trees, including planting, tree inspections, maintenance, and removal.

Due to limited resources and budget constraints, the City established a plan for prioritizing maintenance of trees on a complaint basis, giving priority to any tree with identified defects that could result in damage to property or personal injury and then providing regular maintenance on the City's other trees. There is no specific requirement as to how often a tree must be inspected or trimmed.

- 418 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

The City never received a complaint or service request regarding the tree at issue here. It was clear that the three trees adjacent to the tree with which Kathy collided had been trimmed, but according to an affidavit of the director of the City's parks and recreation department, the City had not trimmed them on or before the date of the accident, and it is unknown who did so.

The Williamses offered into evidence the deposition of their expert witness, Melanie Short. Short is an architect, not an arborist. She opined that the low-hanging branches on the subject tree violate the standard of care for safe sidewalks and bikeways and that the City failed to reasonably maintain the trees along the sidewalk, which created a dangerous condition that caused Kathy's fall and injuries. In order to establish the applicable standard of care, Short looked at the Lincoln Municipal Code and the 2009 International Building Code, which she admitted is not applicable here, but gives a "secondary understanding" of clearances and head heights. She also used "some best practices both from the Federal Highway Administration, as well as ASTM," which she said is a standards organization for "different types of issues and industries." The standard of care Short relied upon in forming her opinion was based on the standard of care in architecture, but she did not know if arborists follow the same standard.

Short explained that the recommended clearance for a tree branch above a sidewalk is 8 or 9 feet, depending upon who is making the recommendation. The City's community forestry division indicates that the recommended minimum clearance for a tree branch over a sidewalk is 9 feet. A clearance of 40 inches in width is also recommended. Short admitted, however, that these numbers are recommendations and not requirements. According to Short, the sidewalk where the Williamses were riding their bicycles is 5 feet wide, and she estimated that the subject tree branches extended at least 3 feet over the sidewalk and were only 3 feet above the ground.

- 419 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

The trees lining the sidewalk where the accident occurred are "Chanticleer flowering pear" trees. The subject tree and three adjacent trees were planted prior to 2007, and Short did not know the growth rate for the subject tree or how many inches per year it grew, acknowledging that trees grow at different rates and that their growth can be affected by the weather and environment. She also admitted that she could not say for how many years the tree's branches had been extending over the sidewalk. Short explained that when the three adjacent trees were trimmed, this tree's condition would have been apparent, and it could have been trimmed at the same time.

In its order on summary judgment, the district court determined that the discretionary function exception to the PSTCA applies and that the City did not have a nondiscretionary duty to warn or take measures to prevent injury. Therefore, the district court found that the Williamses' claims against the City were barred by sovereign immunity and granted the City's motion for summary judgment. The Williamses appeal.

ASSIGNMENTS OF ERROR

The Williamses assign that the district court erred in (1) failing to recuse itself from the proceedings, (2) finding that their claim fell within the exceptions to the PSTCA and that the claims are barred by sovereign immunity, (3) finding that the City did not have a nondiscretionary duty and did not have notice of the low-hanging tree branches, and (4) granting the City's motion for summary judgment and finding that there was no genuine issue of material fact.

STANDARD OF REVIEW

[1] A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned. *Tierney v. Four H Land Co.*, 281 Neb. 658, 798 N.W.2d 586 (2011).

[2] Questions of law and statutory interpretation require an appellate court to reach a conclusion independent of

- 420 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

the decision made by the court below. *Kimminau v. City of Hastings*, 291 Neb. 133, 864 N.W.2d 399 (2015).

[3,4] Whether the allegations made by a plaintiff present a claim that is precluded by exemptions set forth in the PSTCA is a question of law. *Kimminau v. City of Hastings, supra*. An appellate court has an obligation to reach its conclusion on whether a claim is precluded by exemptions set forth in the PSTCA independent from the conclusion reached by the trial court. *Kimminau v. City of Hastings, supra*.

[5,6] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.* In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id*.

## ANALYSIS

*Judicial Bias.*

The Williamses argue that the judge presiding over this proceeding should have recused herself because she is employed by Lancaster County, the county in which the City is located, and is a taxpayer of the City; they claim that she was therefore inherently biased in favor of the City. We conclude that this issue has not been preserved for appeal.

[7-9] Under the Nebraska Revised Code of Judicial Conduct, a judge must recuse himself or herself from a case if the judge's impartiality might reasonably be questioned. *State v. Buttercase*, 296 Neb. 304, 893 N.W.2d 430 (2017). Under the code, such instances in which the judge's impartiality might reasonably be questioned specifically include where the judge has a personal bias or prejudice concerning a party or a party's lawyer. *State v. Buttercase, supra*. A defendant seeking to disqualify a judge on the basis of bias or prejudice bears

- 421 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

the heavy burden of overcoming the presumption of judicial impartiality. *Id*.

[10] A party is said to have waived his or her right to obtain a judge's disqualification when the alleged basis for the disqualification has been known to the party for some time, but the objection is raised well after the judge has participated in the proceedings. *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013). Under these facts, once a case has been litigated, an appellate court will not disqualify a judge and give litigants ""'"a second bite at the apple."'"" *Id*. at 299, 826 N.W.2d at 562.

The rule that it is generally too late to raise the issue of disqualification after the matter is submitted for decision rests on the principle that a party may not gamble on a favorable decision. *Blaser v. County of Madison, supra*. This principle does not apply when the facts constituting the disqualification are unknown, because no gamble could have been purposefully made. *Id*. Instead, the issue of disqualification is timely if submitted at the earliest practicable opportunity after the disqualifying facts are discovered. *Id*.

In the present case, the Williamses did not raise the issue of disqualification or judicial bias during any of the proceedings before the district court; rather, the issue was raised for the first time on appeal. The record before us contains transcripts of hearings held before the district court on January 26 and May 3, 2018, on various motions, but the issue of judicial bias was not raised at either hearing. The Williamses base their allegations of judicial bias on the fact that the City was a party to the proceeding; thus, this alleged disqualifying fact was known to them prior to the hearings. See *State v. Buttercase, supra*. And at the conclusion of the January 26 hearing, the court asked the parties, "Anything else?" Counsel for the Williamses did not raise the issue at that time. We therefore find that they failed to raise the issue at the earliest practicable opportunity and have waived any argument regarding bias. See *id*.

- 422 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

In response to the City's claim that this issue has not been properly preserved, the Williamses argue that there "is no timeframe deadline for recusal of a biased judge" and that no motion for disqualification is required. Reply brief for appellants at 8. They cite to Neb. Rev. Code of Judicial Conduct § 5-302.11, comment 2, which provides that a judge's obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed.

The "Preamble" to the Nebraska Revised Code of Judicial Conduct explains that the code establishes standards for the ethical conduct of judges and judicial candidates. According to the "Scope" of the Nebraska Revised Code of Judicial Conduct, the comments that accompany the rules under the code provide guidance regarding the purpose, meaning, and proper application of the rules and also identify aspirational goals for judges. Thus, the code governs the conduct of *judges* and requires that a judge disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned regardless of whether a motion to disqualify is filed by a party to the proceeding.

Our case law makes clear, however, that if a party believes that a judge should recuse himself or herself because of bias, the party must ask the court to do so at the earliest practicable opportunity. If the party does not, and the judge participates in the proceedings, the party waives the right to assert error as to alleged judicial bias on appeal, and an appellate court will not allow the party to gamble on a favorable decision and then afford that party ""'"a second bite at the apple."'" See *Blaser v. County of Madison*, 285 Neb. 290, 299, 826 N.W.2d 554, 562 (2013). See, also, *In re Interest of J.K.*, 300 Neb. 510, 915 N.W.2d 91 (2018); *State v. Buttercase*, 296 Neb. 304, 893 N.W.2d 430 (2017); *Tierney v. Four H Land Co.*, 281 Neb. 658, 798 N.W.2d 586 (2011). Because the Williamses did not raise this issue at the earliest practicable opportunity, it has not been preserved for appeal.

- 423 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

*Discretionary Function*
*Exception.*

The Williamses argue that the district court erred in determining that their claims under the PSTCA are barred by the discretionary function exception to the waiver of sovereign immunity. We disagree.

[11-13] The City is a political subdivision of the State of Nebraska. See § 13-903(1). The PSTCA reflects a limited waiver of governmental immunity and prescribes the procedure for maintenance of a suit against a political subdivision. *Geddes v. York County*, 273 Neb. 271, 729 N.W.2d 661 (2007). It is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees. *Id*. Statutes that purport to waive the protection of sovereign immunity of the State or its subdivisions are strictly construed in favor of the sovereign and against the waiver. *Id*.

[14] The PSTCA provides limited waivers of sovereign immunity, which are subject to statutory exceptions. See *McGauley v. Washington County*, 297 Neb. 134, 897 N.W.2d 851 (2017). If a statutory exception applies, the claim is barred by sovereign immunity. *Id*.

The statutory exception provided by § 13-910(2) is commonly known as the discretionary function exception. See *McGauley v. Washington County, supra*. Under that exception, the PSTCA shall not apply to any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused. § 13-910(2). Examples of discretionary functions include the initiation of programs and activities, establishment of plans and schedules, and judgmental decisions within a broad regulatory framework lacking specific standards. *Kimminau v. City of Hastings*, 291 Neb. 133, 864 N.W.2d 399 (2015).

[15] A court engages in a two-step analysis to determine whether the discretionary function exception of the PSTCA

- 424 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

applies. *Id*. First, the court must consider whether the action is a matter of choice for the acting employee. *Id*. This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice. *Berkovitz v. United States*, 486 U.S. 531, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988) (considering discretionary function exception of Federal Tort Claims Act). Thus, the discretionary function exception will not apply when a statute, regulation, or policy specifically prescribes a course of action for an employee to follow. *Id*. In this event, the employee has no rightful option but to adhere to the directive. *Id*. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect. *Id*. Second, if the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exception was designed to shield. *Kimminau v. City of Hastings, supra*. The purpose of the discretionary function exception is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. *Id*. See, also, *Berkovitz v. United States, supra*.

In order to determine whether the challenged conduct in the present case involves an element of choice or judgment under the first step of the analysis, we look to factually similar federal cases. See *Lemke v. Metropolitan Utilities Dist.*, 243 Neb. 633, 502 N.W.2d 80 (1993) (discretionary function exception of Federal Tort Claims Act is substantially similar to PSTCA).

In *Autery v. U.S.*, 992 F.2d 1523 (11th Cir. 1993), a tree in a national park fell on a car, killing the driver and injuring the passenger. The plaintiffs filed suit against the government under the Federal Tort Claims Act. At the time of the accident, the park service had an unwritten policy to make every reasonable effort within the constraints of budget, manpower,

- 425 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

and equipment available to detect, document, remove, and prevent tree hazards. To implement the policy, the park service required personnel to initially conduct visual inspections from trucks driven along the road. Any tree that appeared hazardous was then inspected more closely.

On appeal, the 11th Circuit determined that for purposes of a discretionary function exception analysis, it must first identify the specific governmental conduct at issue. The court observed that it is the governing administrative policy that determines whether certain conduct is mandatory for purposes of the discretionary function exception. Therefore, the relevant inquiry is whether controlling statutes, regulations, and administrative policies mandated that the park service inspect for hazardous trees in a specific manner. If not, then the park officials' decision to employ a particular inspection procedure, and its execution of that plan, is protected by the discretionary function exception.

The 11th Circuit recognized that the applicable laws afforded the government broad authority to promote and regulate its parks and the discretion for the destruction of plant life as may be detrimental to the use of the parks. The court concluded that pursuant to those statutory grants of authority, the park service had discretion to design and implement a policy for evaluating and removing trees from the park. Further, the park service's unwritten policy prescribed neither a particular method of inspection nor special rules for inspecting this particular type of tree. The court recognized that such general guidelines are insufficient to deprive the government of the protection of the discretionary function exception and that only if a federal statute, regulation, or policy specifically prescribes a course of action, embodying a fixed or readily ascertainable standard, will the conduct of the government not fall within the discretionary function exception. The court therefore held that the decisions made by the park service in designing and implementing its tree inspection program fell within the ambit of the discretionary function exception.

- 426 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

Similarly, in *Merando v. U.S.*, 517 F.3d 160 (3d Cir. 2008), a tree in a national recreational area fell on a vehicle, killing two passengers. The evidence established that the tree's natural growth caused it to lean with its branches extending over the roadway and that more than 10 years before the accident, an unknown person had trimmed the tree. The plaintiffs brought a claim under the Federal Tort Claims Act. The government moved to dismiss the action on the basis of the discretionary function exception, and the trial court granted the motion.

On appeal, the Third Circuit, like the court in *Autery v. U.S.*, 992 F.2d 1523 (11th Cir. 1993), determined that the relevant inquiry was whether the controlling statutes, regulations, and administrative policies mandated that the park service, which managed the recreational area, locate and manage hazardous trees in any specific manner. The applicable regulations generally afforded the authority to maintain and manage the recreational area and protect visitor safety. The park service's management policies specifically provided that the means by which public safety concerns are to be addressed is left to its discretion, working within the limits of funding and staffing.

The Third Circuit concluded that the controlling statutes, regulations, and policies that led to the creation of the park service's plan did not mandate any particular methods of hazardous tree management such as inspecting certain trees on certain days or removing a particular number of trees per week. In addition, although the park service's unwritten plan required personnel to scan for hazardous trees as they drove the recreational area's roads, there was no statute, regulation, or policy dictating the specifics of that requirement such as when or how often personnel must drive or when they must exit their vehicles to conduct individual tree inspections. Therefore, the Third Circuit concluded that the park service's plan came within the discretionary function.

In the present case, the Williamses argue that maintenance of the City's trees overhanging a sidewalk was not a

- 427 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

discretionary function, because the City was required by law to trim and maintain its trees and to maintain sidewalks in a reasonably safe condition; thus, there was no choice or discretion involved. However, the Williamses misidentify the particular conduct at issue. As the federal courts of appeal held in *Autery v. U.S., supra*, and *Merando v. U.S., supra*, the relevant inquiry is whether the controlling statutes, regulations, and administrative policies mandate the location and management of hazardous trees in a specific manner. If not, then the official's decisions as to the precise manner in which to do so, and execution of that plan, are protected by the discretionary function exception.

We agree with the Williamses that under the applicable regulations, the City had a duty to maintain its trees. Specifically, the Lincoln Municipal Code provides that the selection, planting, maintenance, and removal of trees along public ways within the City are matters over which the City must exercise the control set forth under the municipal code. Lincoln Mun. Code § 12.20.010 (2003). The municipal code further provides that the trimming, spraying, removing, and destroying of all existing trees and of all "street trees . . . planted in or upon any street, parkway, sidewalk space, or other public way within the [C]ity, shall be done by and at the expense of the [C]ity and at its discretion and by no other person." § 12.20.030. But nothing under these sections of the municipal code delineate how or when the maintenance is to be done. And the municipal code specifically grants the City discretion regarding maintenance of its trees.

The Williamses also cite to Neb. Rev. Stat. § 15-734 (Reissue 2012). Section 15-734 provides the City with "general charge, control, and supervision of the streets and sidewalks thereof" and requires the City to "maintain the same in a reasonably safe condition." In order to define "reasonably safe," the Williamses direct our attention to Neb. Rev. Stat. § 39-1812 (Reissue 2016), which mandates that trees "shall be trimmed from the ground up eight feet."

- 428 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

Although § 15-734 requires the City to maintain its sidewalks, it is questionable whether this statute would apply to the maintenance of trees adjacent to a sidewalk, particularly when the statute specifically requires maintenance of sidewalks "in a safe and sound condition and free from snow, ice, and other obstructions." Regardless, assuming without deciding that sidewalk maintenance includes maintaining and trimming the trees adjacent to a sidewalk, § 15-734 does not impose any obligation upon the City to make regular inspections for safety or defects or provide how or when maintenance must be performed. Thus, similar to the provisions of the municipal code, § 15-734 imposes an obligation upon the City, but allows the City to exercise discretion in determining how to fulfill its obligation to maintain its sidewalks.

[16] Having concluded that the challenged conduct involves an element of judgment, we must now determine whether that judgment is of the kind that the discretionary function exception was designed to shield. *Kimminau v. City of Hastings*, 291 Neb. 133, 864 N.W.2d 399 (2015). The purpose of the discretionary function exception is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. *Id*. See, also, *Berkovitz v. United States*, 486 U.S. 531, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988).

After deciding that no mandatory statute, regulation, or policy controlled the development and implementation of the unwritten tree inspection policy, the 11th Circuit in *Autery v. U.S.*, 992 F.2d 1523 (11th Cir. 1993), addressed whether the choices involved in such a development and implementation were grounded in social, economic, and public policy. The court observed that generally, courts have held that decisions about what safety measures to employ in national parks and how to execute them involve balancing the same considerations that inform all policy decisions regarding the management of national parks: safety, aesthetics, environmental impact, and available financial resources. The 11th Circuit

- 429 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

recognized that the U.S. Supreme Court has cautioned against conducting a fact-based inquiry into the circumstances surrounding the government actor's exercise of a particular discretionary function, urging courts instead to look to the nature of the challenged decision in an objective, or general, sense and ask whether that decision is one which would be inherently grounded in considerations of policy. *Autery v. U.S., supra* (citing *United States v. Gaubert*, 499 U.S. 315, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991)). When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be *presumed* that the agent's acts are grounded in policy when exercising that discretion. *United States v. Gaubert, supra*. Under the facts of *Autery v. U.S., supra*, the 11th Circuit concluded that to decide on a method of inspecting potentially hazardous trees, and in carrying out the plan, the park service likely had to determine and weigh the risk of harm from trees in various locations, the need for other safety programs, the extent to which the natural state of the forest should be preserved, and the limited financial and human resources available.

Similarly, in the instant case, the City is afforded the discretion to determine how to maintain its trees, and we therefore presume that the City's acts in carrying out that discretion are grounded in policy. The evidence supports that presumption where the affidavit of the director of the City's parks and recreation department states that in order to carry out the City's obligation of maintaining its trees, it created the community forestry division and established a complaint-based schedule for prioritizing potentially hazardous trees. The community forestry division and tree maintenance are funded through the City's general fund budget, which, according to the affidavit, has been limited in the past 15 years or more due to budget constraints. The affidavit avers that tree maintenance is conducted as diligently as possible using available but limited funds by completing maintenance first on trees that have been

- 430 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

identified with defects that could result in damage to property or personal injury and then providing regular maintenance to other trees. These are the types of policy decisions the discretionary function exception was designed to protect and which we will not second guess. We therefore conclude that the district court did not err in finding that the discretionary function exception applies to bar the Williamses' claims.

*Nondiscretionary Duty*
*and Notice.*

The Williamses argue that the district court erred in finding that the City did not have a nondiscretionary duty to warn and did not have actual or constructive notice of the low-hanging tree branches. We find no merit to this argument.

[17,18] The discretionary function exception does not apply when the governmental entity has a nondiscretionary duty to warn or take other protective measures that may prevent injury as the result of the dangerous condition or hazard. *McGauley v. Washington County*, 297 Neb. 134, 897 N.W.2d 851 (2017). Such a duty exists when (1) a governmental entity has actual or constructive notice of a dangerous condition or hazard caused by or under the control of the governmental entity and (2) the dangerous condition or hazard is not readily apparent to persons who are likely to be injured by the dangerous condition or hazard. *Id*.

In the present case, the uncontroverted evidence establishes that the City had no actual notice of the low-hanging tree branches. The affidavit of the director of the City's parks and recreation department states that the City had never received a complaint or service request regarding the tree at issue here and that although the adjacent trees had been trimmed, they had not been trimmed by the City and the City was unaware of who had trimmed them. Thus, it is undisputed that the City had no actual notice of a dangerous condition.

The Williamses argue that the City had constructive notice because of the length of time the tree had been overgrown.

To support their argument, they rely upon *Foels v. Town of Tonawanda*, 75 Hun 363, 27 N.Y.S. 113 (1894). There, the plaintiff was injured when she stepped into a hole in the sidewalk of a highway bridge. There was evidence tending to show that the hole had been in the sidewalk for 2 or 3 weeks immediately prior to the accident, which the New York Supreme Court found was ample time to justify the jury's finding that the town had constructive notice of it.

Similarly, in *Gielen v. City of Florence*, 94 Neb. 619, 143 N.W. 932 (1913), the plaintiff was injured when she stumbled on a pile of bricks on the sidewalk. The evidence established that for several months prior to the accident, bricks had been piled in a row on the sidewalk (where the plaintiff was injured) by a city contractor preparing to pave the street. While walking on the sidewalk one night, the plaintiff stumbled on a pile of bricks, which was a new obstruction of which she had no knowledge. The pile had been on the sidewalk for approximately 2 weeks. The Nebraska Supreme Court, relying upon *Foels v. Town of Tonawanda, supra*, among other cases, determined that the question as to whether the obstruction remained on the sidewalk for a length of time sufficient to charge the defendant with notice was properly submitted to the jury. And the Supreme Court found that the evidence was sufficient to justify a finding that the city had constructive notice and was negligent in failing to remove the obstacle before the plaintiff was injured.

We find *Foels v. Town of Tonawanda, supra*, and *Gielen v. City of Florence, supra*, distinguishable, because in the instant case, there was nothing that would place the City on notice that the tree needed to be trimmed or evidence of a specific period of time that a dangerous condition existed. In *Gielen v. City of Florence, supra*, an employee of the defendant stacked the bricks on the sidewalk, giving rise to constructive notice that a dangerous condition could exist. Here, however, although the City planted the tree sometime prior to 2007, nothing occurred in the interim to place the City on notice that a dangerous

- 432 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

condition could exist. While it is obvious that the tree continued to grow during that time, Short explained that the growth rate of the tree is unknown and that it is unclear how long the branches were overhanging the sidewalk. Thus, there was no timeframe from which it could be inferred that the City had constructive notice of a dangerous condition.

Additionally, Short's opinion that the City would have had knowledge of the tree's dangerous condition was based on her belief that the City trimmed the surrounding three trees, thus giving it notice of this tree's condition. But the evidence is uncontroverted that the City did not trim the three trees adjacent to the subject tree, and it is unknown who did so.

Moreover, Short is an architect, not an arborist, and she admitted that the standard of care she referenced was based on codes which come together to create the standard of care in architecture, but she did not know whether arborists follow the codes she referenced. Essentially, Short opined that the branches of the tree at issue were overhanging the sidewalk for an unknown period of time, creating a dangerous condition based on recommendations, not requirements, and a standard of care that arborists may or may not follow, and that the City had constructive notice of a dangerous condition based on the faulty premise the City had trimmed the surrounding trees. This evidence does not prove actual or constructive knowledge on the part of the City, nor does it create a genuine issue of material fact as to whether the City had knowledge of this tree's condition. We therefore conclude that the district court did not err in determining that the City did not have actual or constructive notice of a dangerous condition.

In addition to the absence of notice of a dangerous condition, the district court also determined that the evidence establishes that the hazard was readily apparent. We note that the Williamses do not challenge this conclusion on appeal, and we agree with the district court's decision.

According to Michael's affidavit, he was riding in front of Kathy and saw the low-hanging tree branches when he

- 433 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

was approximately 20 to 30 feet away. He warned Kathy and veered around the tree. The district court found it significant that Michael had time to warn Kathy about the overgrown tree and still avoid it by maneuvering around it. The photographs of the tree at issue depict its branches extending over the sidewalk, and according to Short, the branches extended at least 3 feet over the 5-foot-wide sidewalk. Short testified in her deposition that the branches extending over the sidewalk were visible. As a result, the district court did not err in determining that the dangerous condition was readily apparent.

Because the evidence establishes that the City did not have actual or constructive notice of a dangerous condition and that the dangerous condition was readily apparent, we conclude the district court properly determined that there was no nondiscretionary duty to warn or take other protective measures. Accordingly, this assigned error lacks merit.

*Summary Judgment.*

The Williamses argue that the district court erred in granting the City's motion for summary judgment, because they presented numerous genuine issues of material fact. They specifically allege that issues of fact exist, because Short testified as to the "clearance standard for trees" and they testified that "they believed they were riding their bicycles on a bicycle path and were using a public right-of-way." Brief for appellants at 23. They also claim that they presented facts regarding the City's discretionary versus ministerial duty, the nature of the City's duty to trim trees, and the City's actual and constructive notice "due to the disputed fact of who trimmed the three adjacent trees and to the fact of how long the tree at issue had been dangerously overgrown and low-hanging." *Id.* at 23.

The Williamses do not explain how these issues created issues of material fact, and we have generally addressed them above, determining that the district court properly granted the City's motion for summary judgment. To briefly recap,

- 434 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
WILLIAMS v. CITY OF LINCOLN
Cite as 27 Neb. App. 414

although Short explained the clearance standards for trees, she admitted that the numbers provided were merely recommendations and not requirements, and she could not estimate how long the tree at issue had surpassed the recommended clearances. Although the Williamses may have believed they were riding on a bicycle path, an affidavit of the City's director of the planning department states that that particular sidewalk "was not a designated bike path or facility," but that bicycling on that sidewalk was not prohibited. Regardless, this does not change the fact that the recommended clearance levels were not mandatory.

We additionally determined above that setting a tree maintenance schedule was a discretionary function of the City. And despite the Williamses' argument, the evidence was undisputed that the City did not trim the trees adjacent to the tree at issue here. According to the affidavit of the director of the City's parks and recreation department, the City had not trimmed the three adjacent trees on or before the date of the accident, and it was unknown who trimmed them. The Williamses did not present any evidence to the contrary which would establish that the City had, in fact, trimmed those trees, placing it on notice of the dangerous condition of the subject tree. We therefore disagree that the evidence established any genuine issue of material fact which would have precluded entry of judgment as a matter of law. Accordingly, the district court did not err in granting the City's motion for summary judgment.

## CONCLUSION

Having rejected the arguments raised on appeal, we conclude that the district court did not err in determining that the Williamses' claims against the City are barred by sovereign immunity and in granting the City's motion for summary judgment. We therefore affirm the district court's order.

Affirmed.