Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/10/2020 04:10 PM CDT

Jena Lambert, individually and as guardian and
next friend of Olivia Lambert, a minor,
appellant, v. Lincoln Public
Schools et al., appellees.
___ N.W.2d ___

Filed June 19, 2020.    No. S-19-620.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Political Subdivisions Tort Claims Act: Liability.** Whether undisputed facts demonstrate that liability is precluded by the discretionary function exception of the Political Subdivisions Tort Claims Act is a question of law.

4. **Jurisdiction.** Whether a court has subject matter jurisdiction is a threshold issue that should be resolved prior to an examination of the merits.

5. **Political Subdivisions Tort Claims Act: Dismissal and Nonsuit: Immunity.** In cases under the Political Subdivisions Tort Claims Act, if the discretionary function exception applies, the political subdivision is immune from suit and the proper remedy is to dismiss the action for lack of subject matter jurisdiction.

6. **Tort Claims Act: Political Subdivisions Tort Claims Act: Jurisdiction: Dismissal and Nonsuit.** Because it presents a jurisdictional question, courts should determine the applicability of a statutory exception under the Political Subdivisions Tort Claims Act or the State Tort Claims Act before considering nonjurisdictional grounds for dismissal.

7. **Tort Claims Act: Political Subdivisions Tort Claims Act.** The purpose of the discretionary function exception of the State Tort Claims Act and the Political Subdivisions Tort Claims Act is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. It does not extend to the exercise of discretionary acts at an operational level, where there is no room for policy judgment. It is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function applies in a given case.

8. \_\_\_\_ : \_\_\_\_. A two-part analysis determines whether the discretionary function exception applies. First, the court must consider whether the action is a matter of choice for the acting political subdivision or employee. Second, if the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exception was designed to shield.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Affirmed.

John P. Weis, of Wolfe, Snowden, Hurd, Ahl, Sitzmann, Tannehill & Hahn, L.L.P., for appellant.

Joshua J. Schauer and Haleigh B. Carlson, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellee Lincoln Public Schools.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

A minor child and her mother were bitten by a dog on a public school playground after students had been dismissed for the day. They filed a tort action under the Political Subdivisions Tort Claims Act (PSTCA)[1] generally alleging Lincoln Public Schools (LPS) was negligent in failing to enforce a policy of "no dogs" on the playground and in failing to supervise the playground area after classroom instruction ended. The district court granted LPS' motion for summary

---

[1] Neb. Rev. Stat. §§ 13-901 to 13-928 (Reissue 2012).

judgment, finding that LPS was immune from suit under the discretionary function exception[2] to the PSTCA and, alternatively, finding that LPS owed no legal duty under the circumstances. A timely appeal was filed, and we moved the case to our docket.

Because we agree LPS is immune from suit under the discretionary function exception, we affirm.

## I. BACKGROUND

LPS is a political subdivision of the State of Nebraska. LPS operates Sheridan Elementary School (Sheridan) in Lincoln, Nebraska. At all relevant times, Olivia Lambert was a student at Sheridan.

### 1. DOG BITE

On April 4, 2016, Sheridan dismissed students at 3:38 p.m., the normal time. Olivia's mother, Jena Lambert, waited at the dismissal door for Olivia to arrive, after which they walked to the playground area on the south side of Sheridan, where they joined other parents and students who were using the playground.

At approximately 4 p.m., Kristine A. Griffin and Brian T. Griffin, and their 8-year-old son, arrived at the Sheridan playground. Kristine walked the family's dog, on a leash, on the city streets near the playground area. When Kristine asked her son to hold the leash while she cleaned up after the dog, he took the dog onto the Sheridan playground where Olivia was playing. The dog bit Olivia's hand, and while Jena was attempting to help Olivia, the dog bit Jena's abdomen.

Both Olivia and Jena were taken to a local hospital where they received medical care. Olivia's injury required surgery.

### 2. LAWSUIT

Jena, individually and as guardian and next friend of Olivia (collectively the Lamberts), filed this tort action against the Griffins and against LPS. The parties do not dispute that

---

[2] § 13-910(2).

the Lamberts complied with the presuit notice requirements of the PSTCA before commencing the action. The operative amended complaint alleged the Griffins were negligent in not properly confining and restraining their dog, and it alleged LPS was negligent in failing to properly supervise and monitor the Sheridan playground area and in failing to enforce Sheridan's "no dogs" policy.

The Griffins did not file a responsive pleading, and eventually, the Lamberts moved for default judgment. The district court granted the motion, entering judgment against the Griffins and in favor of the Lamberts in the total amount of $140,000. No party has appealed that judgment.

LPS moved for summary judgment arguing, among other things, that LPS owed no legal duty to the Lamberts on these facts and that LPS was immune from suit under the discretionary function exception of the PSTCA. Based on the evidence received at the summary judgment hearing, the trial court found the following facts were undisputed:

(a) School Hours

At Sheridan, the schoolday begins at 8:50 a.m. and ends at 3:45 p.m. Classroom instruction begins at 9 a.m. and ends at 3:38 p.m. The student dismissal period begins once classroom instruction is over and ends at 3:50 p.m. Sheridan teachers are required to be at work from 8:15 a.m. to 3:45 p.m., and the school office closes at 4:30 p.m. Sheridan staff often remain in the school building past the 3:50 p.m. student dismissal time. After the student dismissal period, some Sheridan students remain in the school building as late as 4:40 p.m. to engage in non-LPS activities such as clubs sponsored by the parent-teacher organization or "Family Services" activities. LPS does not administer or supervise these after-school activities.

On the afternoon of April 4, 2016, when the dog bites occurred, it was after the regular schoolday had ended and after Sheridan students had been dismissed. Jena and Olivia were not on the Sheridan playground in connection with an after-school activity or club.

### (b) LPS Policy on Animals

On April 4, 2016, LPS "Regulation 3971.1" provided in relevant part:

> **Animals at large**. It shall be unlawful for any person to allow or permit any dog or other animal to run at large on any school ground. The term "at large" is defined to mean not under the control of any person either by leash, cord, chain, or confinement within a vehicle or pen or other similar enclosure.

The LPS assistant superintendent for general administration and governmental relations testified that on April 4, 2016, the official LPS policy was that a dog was allowed on school grounds it if was on a leash and under control. He testified that this policy generally applied only during the schoolday, and he defined the term "schoolday" as beginning when students can arrive at school and ending when students are dismissed.

### (c) Other LPS Policies

LPS policies give the administrators and supervisory staff at individual schools full power and authority to implement and enforce restrictions on the use of school grounds. Additionally, each school is authorized to determine how long before and after the student schoolday staff is required to be on site, and the principal designates which staff is required to serve on playground, lunchroom, and hall supervision.

### (d) Sheridan's Policy on Dogs

Sheridan has adopted a policy on dogs that is more restrictive than the LPS regulation on animals. According to Sheridan's principal, on April 4, 2016, the policy at Sheridan was "no dogs on school grounds." The principal testified that this "no dogs" policy was mentioned in the school handbook and in school newsletters, and a sign near the Sheridan playground had a red strike through an image of a dog, indicating dogs are not allowed. Both the principal and a Sheridan teacher testified that if Sheridan staff see people with dogs on school grounds during school hours, even on leashes, they

ask them to remove the dog from school grounds. The principal also testified that Sheridan's "no dogs" policy applies only during school hours, from 8:50 a.m. to 3:45 p.m., and that once the schoolday ends, Sheridan staff do not monitor the playground area and it becomes "kind of like a park . . . after hours."

### (e) Summary Judgment Order

The district court granted summary judgment in favor of LPS and dismissed the Lamberts' tort action with prejudice. It concluded that summary judgment was appropriate on several grounds, including that LPS had no legal duty and that the Lamberts' claim was barred under the discretionary function exception under the PSTCA[3].

Regarding Sheridan's "no dogs" policy, the district court found the evidence was undisputed that Sheridan had a policy that no dogs were permitted on the school grounds and that this policy was limited to regular school hours. It found that the decision of Sheridan administrators not to supervise or monitor the playground area after school hours, and thus not to enforce the "no dogs" policy after school hours, was an administrative decision grounded in social, economic, and political policy and was the type of decision that fell squarely within the discretionary function exception.

The Lamberts filed this timely appeal, which we moved to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

The Lamberts assign, restated and summarized, that the district court erred in (1) determining the discretionary function exception applied to bar the Lamberts' claim and (2) finding LPS owed no legal duty under the circumstances.

## III. STANDARD OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence

_____

[3] See *id*.

show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[4] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[5]

[3] Whether undisputed facts demonstrate that liability is precluded by the discretionary function exception of the PSTCA is a question of law.[6]

## IV. ANALYSIS

Before we review the lower court's decision to grant summary judgment based on the discretionary function exception, we comment briefly on the order in which a court should address multiple grounds for dismissal. In cases such as this one, where the political subdivision seeks summary judgment on a number of different grounds, courts should address as a threshold matter any grounds which are jurisdictional.

[4-6] Whether a court has subject matter jurisdiction is a threshold issue that should be resolved prior to an examination of the merits.[7] In cases under the PSTCA, if the discretionary function exception applies, the political subdivision is immune from suit[8] and the proper remedy is to dismiss the action for lack of subject matter jurisdiction.[9] Because

---

[4] *Williamson v. Bellevue Med. Ctr.*, 304 Neb. 312, 934 N.W.2d 186 (2019).

[5] *Id.*

[6] See *Lemke v. Metropolitan Utilities Dist.*, 243 Neb. 633, 502 N.W.2d 80 (1993).

[7] *Hawley v. Skradski*, 304 Neb. 488, 935 N.W.2d 212 (2019).

[8] See *McGauley v. Washington County*, 297 Neb. 134, 897 N.W.2d 851 (2017).

[9] *Reiber v. County of Gage*, 303 Neb. 325, 341, 928 N.W.2d 916, 928 (2019) ("[a] suit that is barred by sovereign immunity is dismissed for lack of subject matter jurisdiction").

it presents a jurisdictional question, courts should determine the applicability of a statutory exception under either the PSTCA or the State Tort Claims Act (STCA)[10] before considering nonjurisdictional grounds for summary judgment.

### 1. Applicable Legal Standards

The discretionary function exception is codified at § 13-910(2) and provides the PSTCA shall not apply to "[a]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused." A similar provision is contained in the STCA, and we have held that cases construing the STCA's discretionary function exception are equally applicable to cases under the PSTCA.[11]

[7] The purpose of the discretionary function exception of the STCA and the PSTCA is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of action in tort.[12] It does not extend to the exercise of discretionary acts at an operational level, where there is no room for policy judgment.[13] It is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function applies in a given case.[14]

[8] A two-part analysis determines whether the discretionary function exception applies.[15] First, the court must consider whether the action is a matter of choice for the acting political subdivision or employee.[16] Second, if the court concludes

---

[10] Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014).

[11] See *Shipley v. Department of Roads*, 283 Neb. 832, 813 N.W.2d 455 (2012).

[12] *Id*.

[13] *Holloway v. State*, 293 Neb. 12, 875 N.W.2d 435 (2016).

[14] *Id*.

[15] See *McGauley, supra* note 8.

[16] See *id*.

that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exception was designed to shield.[17] Examples of discretionary functions include the initiation of programs and activities, establishment of plans and schedules, and judgmental decisions within a broad regulatory framework lacking specific standards.[18]

## 2. Lamberts' Arguments

In arguing that the district court erred in applying the discretionary function exception, the Lamberts present two arguments. First, they argue there is a genuine factual dispute about whether Sheridan's "no dogs" policy actually extended beyond school hours. Second, and primarily, they argue the failure of LPS employees to enforce Sheridan's "no dogs" policy was an operational judgment, and not the kind of judgment the discretionary function exception was meant to shield.[19] As we explain below, neither argument has merit.

### (a) No Genuine Issue of Material Fact Regarding Scope of Sheridan's "No Dogs" Policy

We find no support in the record for the Lamberts' suggestion that there is a genuine issue of material fact regarding whether Sheridan's "no dogs" policy extended beyond the hours students were in school. The Lamberts cite to deposition testimony from a Sheridan teacher who also taught after-school clubs pursuant to an agreement with Sheridan's parent-teacher organization. This teacher testified that when students were dismissed from the after-school clubs, she, or another person paid by the parent-teacher organization, would stay with the students until they were picked up by a parent. Even construing this testimony in the light most favorable to the Lamberts and giving them every reasonable inference, this

---

[17] *Id.*

[18] *Kimminau v. City of Hastings*, 291 Neb. 133, 864 N.W.2d 399 (2015).

[19] See *McGauley, supra* note 8.

testimony had nothing to do with LPS employees monitoring the playground area or enforcing the "no dogs" policy after hours. There is nothing about this testimony that creates a genuine issue of material fact concerning whether Sheridan's "no dogs" policy extended beyond regular school hours.

To the contrary, we agree with the district court that the undisputed evidence in the record demonstrates that Sheridan's "no dogs" policy applied, and was enforced, only during regular school hours, but not after students were dismissed for the day.

### (b) Discretionary Function Exception Correctly Applied

The Lamberts concede that the decision of Sheridan administrators to adopt a "no dogs" policy was a discretionary function, but they argue that the failure to enforce that policy after school hours was a "failure on the operational level by the employees to enforce the policy Sheridan had decided to put in place."[20] Their argument in this regard is premised on the assumption that Sheridan's "no dogs" policy applied after school hours and therefore should have been enforced after school hours. But this assumption finds no support in the evidence.

As already stated, the evidence was undisputed that Sheridan's policy was not to allow dogs on the school grounds during school hours, even on leashes, but that the "no dogs" policy did not apply after regular school hours. And to the extent the Lamberts can be understood to argue that Sheridan negligently adopted a policy prohibiting dogs on school grounds only during school hours, or that Sheridan negligently decided not to supervise the playground after students were dismissed for the day, we find such conduct falls squarely within the discretionary function exception.

On this record, both steps of the discretionary function analysis are met. Sheridan's decision to enforce its "no dogs"

---

[20] Brief for appellant at 21.

policy only during school hours, and its decision not to supervise the playground area at all after school hours, involved the exercise of judgment.[21] And it was precisely the kind of judgment the discretionary function exception is designed to shield.[22]

LPS policies give individual school administrators broad discretion as to what restrictions to place on the use of school buildings and grounds and how to utilize staff to supervise activities on school grounds. The record shows Sheridan administrators, in the exercise of this discretion, decided to establish and enforce a "no dogs" policy only during school hours and decided not to supervise the school playground area at all after students have been dismissed for the day. How to utilize staff and budget to supervise school grounds and regulate activities thereon are administrative decisions grounded in social, economic, and political policy, and they fall within the discretionary function exception.[23]

## V. CONCLUSION

Because LPS is immune from the Lamberts' claims under the discretionary function exception of the PSTCA, the district court correctly granted summary judgment on that basis and dismissed the action as against LPS with prejudice. The judgment of the district court is affirmed.

Affirmed.

---

[21] See *McGauley, supra* note 8.

[22] *Id*.

[23] See *Kimminau, supra* note 18.