Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/14/2022 08:08 AM CDT

Cameron Williams, appellant,
v. State of Nebraska
et al., appellees.
___ N.W.2d ___

Filed December 17, 2021.    No. S-20-604.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

2. **Tort Claims Act: Appeal and Error.** Whether the allegations made by a plaintiff constitute a cause of action under the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014 & Cum. Supp. 2020), or whether the allegations set forth claims which are precluded by the exemptions set forth in the act is a question of law, for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.

3. **Rules of the Supreme Court: Pleadings: Appeal and Error.** An appellate court reviews a district court's denial of a motion to amend under Neb. Ct. R. Pldg. § 6-1115(a) for an abuse of discretion. However, an appellate court reviews de novo any underlying legal conclusion that the proposed amendments would be futile.

4. **Jurisdiction.** Whether a court has subject matter jurisdiction is a threshold issue.

5. **Tort Claims Act: Legislature: Immunity: Waiver.** Through the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014 & Cum. Supp. 2020), the Nebraska Legislature has enacted a limited waiver of the State's sovereign immunity with respect to some, but not all, types of tort claims.

6. **Political Subdivisions Tort Claims Act: Tort Claims Act: Appeal and Error.** Because the language of the intentional tort exception is nearly identical under both Neb. Rev. Stat. § 13-910(7) (Cum. Supp. 2020) of the Political Subdivisions Tort Claims Act and Neb. Rev. Stat.

§ 81-8,219(4) (Cum. Supp. 2020) of the State Tort Claims Act, Nebraska appellate courts have applied cases construing the exception under the Political Subdivisions Tort Claims Act to cases under the State Tort Claims Act, and vice versa.

7. **Motions to Dismiss: Pleadings.** When a court grants a motion to dismiss, a party should be given leave to amend absent undue delay, bad faith, unfair prejudice, or futility of amendment. But leave should not be granted when it is clear that the defect cannot be cured by amendment.

8. **Pleadings.** Where leave to amend a complaint is sought before discovery is complete and before a motion for summary judgment has been filed, leave to amend should be denied as futile only if the proposed amendment cannot withstand a motion to dismiss under Neb. Ct. R. Pldg. § 6-1112(b).

9. **Motions to Dismiss: Pleadings.** Ordinarily, a district court must consider and rule on a pending motion to amend before ruling on a motion to dismiss.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Joshua D. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and James A. Campbell, Solicitor General, for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

## NATURE OF CASE

Cameron Williams appeals the dismissal of this negligence action by the district court for Lancaster County. The claim was brought against the State pursuant to Nebraska's State Tort Claims Act (STCA), Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014 & Cum. Supp. 2020). Williams is an inmate in the custody of the Nebraska Department of Correctional Services (DCS). Williams claims the State was negligent in its handling of security when, despite requirements of a "'keep separate'" list, the State placed inmate Jonathan Armendariz,

who had killed Williams' brother, in Williams' housing unit. Fearing for his safety, Williams assaulted Armendariz, and in retaliation, Williams was later stabbed in his cell.

Applying the intentional tort exception to the STCA, the district court concluded that the State was immune and granted the State's motion to dismiss Williams' negligence claim based on lack of subject matter jurisdiction. The district court further found that amendment would be futile because the claims are inextricably linked to "at least one assault and/or battery" and therefore denied Williams' motion to amend his complaint. Williams appeals.

Under settled precedent interpreting the intentional tort exception of the STCA, the State is immune from Williams' claims because they arise out of an assault. We affirm the judgment of the district court.

## STATEMENT OF FACTS

For purposes of this appeal from the granting of a motion to dismiss, our factual record consists only of the allegations in the complaint, which at this stage of the proceedings are accepted as true.[1]

Williams' complaint alleges he was an inmate in DCS custody when Armendariz was placed in DCS custody. Armendariz had murdered Williams' brother, and when Armendariz began serving a sentence in 2011, Williams' mother was assured that in order to ensure Williams' safety, Armendariz would not be placed in the same facility as Williams. DCS was aware that Armendariz and other prisoners associated with him, or acting on his behalf, including one or more "'safety threat groups'" or "'gangs,'" posed a threat to Williams' safety. DCS placed Armendariz on Williams' central-monitoring list, which designated the inmates whom DCS should "keep separate" from him.

Williams was housed at Tecumseh State Correctional Institution (TSCI) from 2013 until 2018. During the summer

---

[1] See *Brown v. State*, 305 Neb. 111, 939 N.W.2d 354 (2020).

of 2017, despite the identified risks to Williams, Armendariz was transferred to TSCI's restrictive housing unit, otherwise referred to as the "Special Management Unit" (SMU). Neither Williams nor his mother was informed until October 2017 of Armendariz' presence at TSCI. When they learned that Armendariz was at TSCI, Williams and his mother warned the State and requested protection and a transfer of Williams from TSCI. Williams' mother requested that TSCI separate Armendariz and Williams immediately. The warden of TSCI told Williams' mother that Williams was at no risk because Armendariz was being housed in the SMU for disciplinary reasons and was separate from Williams, who was in the general population unit.

Williams then contacted Scott Frakes, the director of DCS, to alert him that the central monitoring "keep separate" restriction was being violated. Williams also requested a transfer from his unit manager. Over the next several months, Williams made repeated attempts to warn DCS and request a transfer, but no action was taken to separate or protect Williams.

Williams again requested a transfer during his reclassification in March 2018. After several weeks, Williams was notified that he had been approved to be transferred to the Nebraska State Penitentiary (NSP). On May 10, Williams' mother wrote to Frakes to remind him of the danger Armendariz posed to Williams, and she requested that the pending transfer be expedited.

On May 25, 2018, Armendariz was released from the SMU and moved to the same housing unit at TSCI where Williams was being housed. The inmates in the housing unit were free to move around. Williams knew he would be in frequent direct contact with Armendariz and feared being assaulted or killed.

According to Williams, he had "no choice but to protect himself," so Williams assaulted Armendariz, after which Williams was placed in the SMU for 5 days. When Williams' mother learned of the incident, she left messages with officials at TSCI to try to expedite Williams' transfer. She eventually

spoke by phone with a deputy warden, who apologized for the incident and assured her that Williams would be transferred to NSP as soon as possible. Williams was eventually transferred to NSP and placed in the general population.

On September 22, 2018, two inmates entered Williams' cell at NSP and assaulted him. Williams was stabbed multiple times. DCS told Williams that its "'Gang Intel'" believed the assault was in retaliation for Williams' attack on Armendariz at TSCI.

Williams filed a negligence claim under the STCA, naming as defendants the State, DCS, Frakes, and other State actors. Williams' complaint alleged that the defendants knew Armendariz posed a foreseeable risk of physical harm to Williams and negligently failed to protect Williams from that harm. Williams alleged that as a result, he suffered "physical, emotional, mental, and psychological injuries" and sought to recover damages for future medical treatment, past and future pain and suffering, past lost wages and future loss of earning capacity, and past and future disability.

The State moved to dismiss Williams' complaint for lack of subject matter jurisdiction. Before the hearing, Williams requested leave to amend the complaint to "allege additional facts further establishing . . . subject matter" jurisdiction of his claims and to "articulate additional facts establishing the elements of [Williams'] negligence claim in greater detail."

In its written order, referring to the intentional tort exception in the STCA, § 81-8,219(4), the district court determined that Williams' negligence claim was barred by sovereign immunity because it arose from "*multiple layers* of assault/battery." Next, the district court denied Williams' motion for leave to amend his complaint because it concluded that allowing Williams to amend would be futile, as all claims would be "clearly inextricably linked to at least one assault and/or battery" and "thus 'arise out of' an assault or battery and are barred by sovereign immunity."

Williams appeals.

## ASSIGNMENTS OF ERROR

Williams assigns, summarized and restated, that the district court erred when it found that (1) Williams' claim arises from an assault or battery and is barred by sovereign immunity and (2) amendment of the complaint would be futile.

## STANDARD OF REVIEW

[1,2] A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[2] Whether the allegations made by a plaintiff constitute a cause of action under the STCA or whether the allegations set forth claims which are precluded by the exemptions set forth in the act is a question of law, for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.[3]

[3] An appellate court reviews a district court's denial of a motion to amend under Neb. Ct. R. Pldg. § 6-1115(a) for an abuse of discretion. However, we review de novo any underlying legal conclusion that the proposed amendments would be futile.[4]

## ANALYSIS

Williams contends the district court erred when it granted the State's motion to dismiss and denied his motion for leave to amend his complaint. We find no merit to Williams' assignments of error.

*Motion to Dismiss.*

[4] The first issue presented is whether the intentional tort exception to the State's waiver of sovereign immunity under § 81-8,219(4) barred Williams' claim. Because this presents

---

[2] *Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020).

[3] *Id.*

[4] *Chaney v. Evnen*, 307 Neb. 512, 949 N.W.2d 761 (2020).

a question of subject matter jurisdiction, we address it as a threshold issue.[5]

[5,6] Through the STCA, the Nebraska Legislature has enacted a limited waiver of the State's sovereign immunity with respect to some, but not all, types of tort claims.[6] The STCA contains specific exceptions to the waiver of sovereign immunity. As relevant here, the intentional tort exception in § 81-8,219(4) provides that sovereign immunity is not waived for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contract rights . . . ." Because the language of this exception is nearly identical under both Neb. Rev. Stat. § 13-910(7) (Cum. Supp. 2020) of the Political Subdivisions Tort Claims Act (PSTCA) and § 81-8,219(4) of the STCA, we have applied cases construing the exception under the PSTCA to cases under the STCA, and vice versa.[7]

Our cases construing and applying the intentional tort exception have consistently barred claims like the one alleged by Williams. In *Moser v. State*,[8] we applied the intentional tort exception to bar a negligence claim brought by the estate of a man who was fatally assaulted by a cellmate. We concluded that the claim that prison officials had negligently double-bunked the two inmates arose out of the assault and thus fell within the STCA's exception in § 81-8,219(4) for "[a]ny claim arising out of assault."

In *Edwards v. Douglas County*,[9] we applied that same exception to bar a claim brought by a woman who was held hostage and sexually assaulted by a former boyfriend. The woman

---

[5] See *Lambert v. Lincoln Public Schools*, 306 Neb. 192, 945 N.W.2d 84 (2020).

[6] See *Moser v. State, supra* note 2.

[7] *Edwards v. Douglas County*, 308 Neb. 259, 953 N.W.2d 744 (2021).

[8] *Moser v. State, supra* note 2.

[9] *Edwards v. Douglas County, supra* note 7.

alleged that the county was negligent in its handling of a series of calls to the 911 emergency dispatch service, which led to a delay in responding, and was therefore liable. We rejected that assertion, noting that no matter how the negligence claim was restated, it arose out of the underlying assault and fell within the intentional tort exception of the PSTCA.

In *Britton v. City of Crawford*,[10] a burglary suspect was shot and killed during a standoff with police. The suspect's personal representative filed a claim against the city, alleging that law enforcement was negligent in its tactics. We concluded that the claim was barred by the intentional tort exception. We reasoned that the exception not only bars claims for assault and battery, but bars claims arising out of an assault and battery.

For his claim, Williams' complaint alleges that the State negligently failed to separate Williams from Armendariz and his supporters. But the injury and damages Williams alleges plainly arose from Williams' preemptive assault on Armendariz, from the retaliatory assault on Williams, and from Williams' fear of a potential assault on him by Armendariz. We therefore conclude that Williams' negligence claim against the State is one which arose from an assault, is barred by the intentional tort exception to the State's waiver of sovereign immunity under the STCA, and was properly dismissed by the district court.

*Leave to Amend.*

Williams next argues that although his claim for negligence was dismissed, the district court erred when it denied him leave to amend his complaint to allege, inter alia, negligent infliction of emotional distress as a separate theory of recovery. Although Williams did not offer a proposed amendment to the district court, the parties discussed emotional damages at the hearing. Williams suggested he would make his complaint more specific and offer additional facts. However, the district court found that any such amendment would be futile because it would also arise out of "*multiple layers* of assault/battery"

---

[10] *Britton v. City of Crawford*, 282 Neb. 374, 803 N.W.2d 508 (2011).

and consequently be barred by sovereign immunity under § 81-8,219(4).

[7,8] When a court grants a motion to dismiss, a party should be given leave to amend absent undue delay, bad faith, unfair prejudice, or futility of amendment.[11] But leave should not be granted when it is clear that the defect cannot be cured by amendment.[12] Considering the question of whether an amendment is futile, we have said: "[W]here leave to amend is sought 'before discovery is complete and before a motion for summary judgment has been filed . . . [l]eave to amend . . . should be denied as futile . . .'" only if the proposed amendment cannot withstand a motion to dismiss under Neb. Ct. R. Pldg. § 6-1112(b)(6).[13] We apply this reasoning to dismissal for lack of jurisdiction.[14]

Williams' proffered amendments, including allegations of negligent infliction of emotional distress, cannot withstand a motion to dismiss. Like his other negligence allegations discussed above, recasting his claim as one for negligent infliction of emotional distress does not change the fact that the injury arose out of one or both of the assaults discussed above. We have previously rejected "semantic recasting of events" to "circumvent the assault and battery exemption through 'artful pleading.'"[15] Williams' complaint was futile under the STCA intentional tort exception, § 81-8,219(4), and we find no error in the district court's denial of leave to amend.

---

[11] See, *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018); *Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. 153, 741 N.W.2d 184 (2007).

[12] *Id.*

[13] *Rodriguez v. Catholic Health Initiatives*, 297 Neb. 1, 16, 899 N.W.2d 227, 238 (2017).

[14] See *Bailey v. First Nat. Bank of Chadron, supra* note 11.

[15] *Edwards v. Douglas County, supra* note 7, 308 Neb. at 279, 953 N.W.2d at 757. See, *Moser v. State, supra* note 2; *Jill B. & Travis B. v. State*, 297 Neb. 57, 899 N.W.2d 241 (2017) (citing *JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260 (11th Cir. 2000)).

*Sequence of Decisions.*

[9] Finally, Williams claims that the district court made a reversible procedural error because its order addressed the State's motion to dismiss before addressing Williams' motion to amend the complaint. We have stated that ordinarily, a district court must consider and rule on a pending motion to amend before ruling on a motion to dismiss.[16] However, here, subject matter jurisdiction was at issue under § 81-8,219(4), and the district court was first required to determine the applicable law to resolve both motions. The court effectively decided that both the existing and proposed complaints sound in negligence and that amendment is futile due to § 81-8,219(4) because the assaults are foundational to all of Williams' allegations and proposed amendments. Here, the district court's decision to decide the jurisdictional and amendment issues together was not error.

We briefly address the dissent, but only to point out that it offers nothing new to our jurisprudence on the intentional tort exception. The majority and dissenting opinions in *Moser*[17] and *Edwards*[18] exhaustively addressed the relevant issues of sovereign immunity and statutory construction. In those cases, the majority explained this court's precedent construing the exception to apply whenever a tort claim against the State arises from an assault. The majority also explained why, in *Moser*, this court overruled the only case decided in the past 20 years which had departed from such precedent.

In both *Moser* and *Edwards*, the dissent advanced a contrary interpretation of the statutory exception, which would immunize the State from tort claims arising from assaults committed by state employees, but would allow the State to be sued for assaults committed by someone other than a state employee. In response to the majority and dissenting opinions in *Moser*

---

[16] See *Eadie v. Leise Properties, supra* note 11.

[17] *Moser v. State, supra* note 2.

[18] *Edwards v. Douglas County, supra* note 7.

and *Edwards*, the Legislature has begun considering proposed amendments to the statutory language. That public policy debate in the Legislature is ongoing, and this court should allow it to develop unencumbered by judicial rhetoric urging any particular legislative outcome.

## CONCLUSION

The district court correctly dismissed Williams' negligence claim against the State because it arose out of an assault and thus was barred by the intentional tort exception. Further, the district court did not abuse its discretion in denying Williams leave to amend the complaint, because such amendments would be futile. Accordingly, we affirm the judgment of the district court.

AFFIRMED.

MILLER-LERMAN, J., dissenting.

For all of the reasons explained in my dissents in *Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020), and *Edwards v. Douglas County*, 308 Neb. 259, 953 N.W.2d 744 (2021), I respectfully disagree with the majority's opinion that a negligence claim is barred by sovereign immunity if there is an assault by anyone anywhere in the picture. In this case, the authorities knowingly placed Cameron Williams and the killer of Williams' brother, Jonathan Armendariz, in the same housing unit in contravention of the safety objectives of the "'keep separate'" list. Assaults by inmates later ensued. Even though the State authorities were indifferent to their actual knowledge of the risk of such placement, they are immune from suit under *Moser* and *Edwards*. This is how it works under current Nebraska jurisprudence: State actors can be dangerously negligent with impunity and immunity if a nonstate actor later perpetrates an expected assault.

Regarding his claims, Williams' complaint alleges that despite every effort on his part to warn the proper officials that Armendariz posed a serious threat to his safety, numerous

acts of negligence placed him in serious danger, causing emotional and ultimately physical harm. According to the complaint, the State failed to follow its safety procedures and negligently handled inmate safety with the result that Williams and Armendariz came into contact at the Tecumseh State Correctional Institution. Later, lax security by State officials at the Nebraska State Penitentiary allowed assailants tied to Armendariz to enter Williams' cell and stab him.

Although Williams may have a heavy burden in being able to prove negligence by the State, in my view, he has alleged sufficient facts to survive a motion to dismiss. Thus, without opining on the strength of Williams' negligence claims and ignoring whether Williams is a compelling plaintiff, I wish to return to the majority's continued expansion of the intentional tort exception to the State's waiver of sovereign immunity under both Neb. Rev. Stat. § 13-910(7) (Cum. Supp. 2020) of the Political Subdivision Tort Claims Act (PSTCA) and Neb. Rev. Stat. § 81-8,219(4) (Cum. Supp. 2020) of the State Tort Claims Act (STCA).

In *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007), this court followed the reasoning of the U.S. Supreme Court's holding in *Sheridan v. United States*, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988). As I explained in *Moser, supra*, and in *Edwards, supra*, and repeat again today, the majority continues to refuse to follow U.S. Supreme Court precedent. In my analysis which follows are excerpts of my dissents in *Moser, supra*, and *Edwards, supra*, without citation, discussing the viability of claims based on antecedent negligent acts by the State occurring before an assault or battery, and why such negligence can be considered a viable "claim" stated.

*Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2021), overruled *Doe* based on the dubious notion that the U.S. Supreme Court and the Nebraska Supreme Court interpret the same statutory language so differently that adhering to U.S. Supreme Court precedent would offend Nebraska. As I explained in

my *Moser* dissent, there is no meaningful difference between statutory interpretation habits of the Nebraska Supreme Court and the U.S. Supreme Court in this regard, and reading the text of § 81-8,219(4) and its counterpart § 13-910(7) in the context of the STCA and PSTCA of which they are respectively a part, including the definition of "claim" in § 81-8,219(4) and similarly the definition of "claim" in Neb. Rev. Stat. § 13-903(4) (Reissue 2012), I conclude that the intentional tort assault exception to the waiver of sovereign immunity does not apply; hence, the State is subject to suit in this case.

*The Nebraska Statute and the Federal Statute
Should Be Read the Same Way.*

As in *Moser, supra*, a case involving an inmate assault, the majority reasons that the State's earlier negligence "claim" arose out of the subsequent assault by a nongovernmental assailant. The majority believes that Nebraska abides by a unique statutory interpretation scheme, so it cannot follow the interpretation of the same language as found by the U.S. Supreme Court in *Sheridan, supra*. But, as I explained in my dissents in *Moser, supra*, and *Edwards v. Douglas County*, 308 Neb. 259, 953 N.W.2d 744 (2021), the federal and Nebraska interpretation schemes are the same, i.e., read the waiver of immunity strictly and the exceptions thereto broadly, and therefore, one should expect the same result. The *Moser* majority, however, chose to ignore the wisdom of the U.S. Supreme Court precedent and insisted that Nebraska should read the same language differently and that this reading is what the Nebraska Legislature intended. I respectfully disagree.

In my *Moser* and *Edwards* dissents, I stated:

The U.S. Supreme Court has addressed the waiver of sovereign immunity and the "arising out of assault" exception language. Just like Nebraska, the U.S. Supreme Court has stated that a sovereign immunity waiver "will be strictly construed . . . in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486

(1996). And just like Nebraska, one justice has summarized the applicable U.S. Supreme Court law as follows: "In cases where, as here, the question whether a particular claim is subject to an exception is disputed, we have construed the FTCA [Federal Tort Claims Act] exceptions broadly to preclude claims for actions Congress intended to except from the FTCA's general waiver of immunity." *Dolan v. Postal Service*, 546 U.S. 481, 499 n.3, 126 S. Ct. 1252, 163 L. Ed. 2d 1079 (2006) . . . .

The U.S. Supreme Court has warned, however, that "'unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute,' . . . which 'waives the Government's immunity from suit . . . .'" *Id.*, 546 U.S. at 492 (Thomas, J., dissenting). And we too have resisted the temptation to accord unduly generous interpretations of exceptions which would defeat the waiver. See, e.g., *Brown* [*v. State*], 305 Neb. [111,] 122, 939 N.W.2d [354,] 361 [(2020)] (declining to read language of exception so broadly that it "would judicially expand" exception). Applying U.S. Supreme Court precedent and according a broad reading to the exception provisions of the FTCA to a fact pattern akin to the instant case, the U.S. Court of Appeals for the Second Circuit stated: "Despite the broad reading given to [the FTCA] section 2680(h)'s 'arising out of' language [equivalent to Nebraska's §§ 81-8,219(4) and 13-910(7)], [the section] may not bar mixed claims of negligence and intentional conduct in the relatively uncommon case" where the negligence claim is independent of the intentional tort. *Guccione v. U.S.*, 847 F.2d 1031, 1037 (2d Cir. 1988). So even applying a broad reading to the intentional tort exception, cases like the instant matter are not barred where there is independent negligence by the government.

Given the above, the Nebraska Supreme Court and the U.S. Supreme Court clearly share the same approach to the statutory language at issue. Nevertheless, without making

an apt comparison, the majority insists the Nebraska approach to statutory interpretation is so different that reading the same language requires a result in Nebraska different from that of the U.S. Supreme Court's controlling authority.

*Moser v. State*, 307 Neb. 18, 35-36, 948 N.W.2d 194, 206 (2020) (Miller-Lerman, J., dissenting). Accord *Edwards, supra* (Miller-Lerman, J., dissenting).

In my view, the majority's act of broadening the assault exception yet again through erroneous interpretation is a judicial expansion beyond the statute's text and is a usurpation of the legislative power.

*The Intentional Tort Assault Exception Applies to Claims Alleging the Intentional Tort of Assault Committed by Governmental Employees But Not to the Intentional Tort of Assault Committed by Nongovernmental Assailants.*

In the very text of the PSTCA and STCA statutes, the statutory language shows that the language of the intentional tort exception (sometimes referred to as "exemption") applies to intentional torts committed by governmental employees but not to intentional torts committed by nongovernmental actors.

The majority relies on the exception, but fails to explain— "exception to what?" The answer is that the exception is applicable only to a "claim" that a governmental employee—not a nongovernmental person—committed the very tort sought to be excepted. That is, the tort allegedly committed by the governmental employee must be the same tort for which the exception is applicable. So, if the governmental employee commits an assault, the governmental entity can receive immunity based on the assault exception to the waiver of sovereign immunity. See, e.g., *Britton v. City of Crawford*, 282 Neb. 374, 803 N.W.2d 508 (2011) (concluding that police officers who shot victim committed intentional battery and were immune). But if the governmental employee commits a nonassault act of

negligence, the governmental entity cannot receive immunity based on the assault exception where the assault was committed later by a random individual who is not a governmental employee.

The Nebraska statutes' general waiver of immunity applies only to "tort claims" of its employees. See Neb. Rev. Stat. §§ 81-8,210(4) (Reissue 2014) and 13-902 (Reissue 2012). For example, the types of claims covered by the STCA waiver of immunity are defined in § 81-8,210(4), where "claim" is defined:

> *Tort claim means any claim* against the State of Nebraska for money only on account of damage to or loss of property or on account of personal injury or death *caused by the negligent or wrongful act or omission of any employee of the state*, while acting within the scope of his or her office or employment, under circumstances in which the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death . . . .

(Emphasis supplied.) Thus, under § 81-8,210(4), a "claim" is an "act or omission" of an "employee" of the State. An "[E]mployee," as defined under § 81-8,210(3), is "any one or more officers or employees of the state or any state agency and shall include duly appointed members of boards or commissions when they are acting in their official capacity."

The intentional tort exception on which the majority relies is found in § 81-8,219(4) and provides that the STCA shall not apply to "Any *claim* [defined in § 81-8,210(4) as a negligent or wrongful act or omission by a governmental employee] arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contract rights." (Emphasis supplied.) Construing the same language, the U.S. Supreme Court has explained:

> The exception should therefore be construed to apply only to claims that would otherwise be authorized by the basic waiver of sovereign immunity. Since an assault by a person who was not employed by the Government could

not provide the basis for a claim under the FTCA [or the STCA and PSTCA], the [intentional tort] exception could not apply to such an assault; rather, *the exception only applies in cases arising out of assaults by federal [or governmental subdivision] employees.*
*Sheridan v. United States*, 487 U.S. 392, 400, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988) (emphasis supplied).

The definitional statute, § 81-8,210(4), which is omitted from the majority's analysis, states that "claim" shall mean "negligent or wrongful *act or omission of any employee of the state.*" (Emphasis supplied.) Under the STCA, sovereign immunity is waived for certain acts, and such acts give rise to "claims" which form the basis of viable lawsuits unless such claims are excepted. "Claim" is a statutory word of art. So the intentional tort exception for "[a]ny *claim* arising out of assault" in § 81-8,219(4) (emphasis supplied) by definition plainly means that a "negligent or wrongful act or omission of any employee of the state" of the kind described will be excepted, see § 81-8,210(4). An assault by an inmate is not a "claim."

As I stated previously:

In *Sheridan v. United States*, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988), where liability against the government was not precluded, the Court relied on two cases which involved assaults by inmates rather than by governmental employees. Both cases alleged negligence by federal employees by failing to prevent the assault that caused injury: *United States v. Muniz*, 374 U.S. 150, 83 S. Ct. 1850, 10 L. Ed. 2d 805 (1963) (allowing 12 inmates to gather to beat up one inmate, the plaintiff), and *Panella v. United States*, 216 F.2d 622 (2d Cir. 1954). The *Sheridan* Court agreed with Judge (later Justice) Harlan's reasoning in *Panella* based on statutory interpretation to the effect that the intentional tort exception only applied to claims already authorized by the waiver of sovereign immunity, that is, to claims

involving torts committed by governmental employees. In Nebraska, that concept is found in § 81-8,210(4), which provides that the claims to which sovereign immunity is waived are "the negligent or wrongful act or omission of any employees of the [S]tate." Contrary to § 81-8,210(4), the majority's reasoning assumes that the waiver of the State's immunity includes a claim against the State under the [STCA] based solely on an inmate's assault of another inmate. But there is no such cognizable claim under the [STCA], so one cannot logically apply an exception to a nonexistent claim. See *Sheridan, supra.*

*Moser v. State*, 307 Neb. 18, 44-45, 948 N.W.2d 194, 211 (2020) (Miller-Lerman, J., dissenting).

These statutory words defining "claim" are plain, direct, and unambiguous. We have repeatedly said:

> When interpreting a statute, the starting point and focus of the inquiry is the meaning of the statutory language, understood in context. *Rogers v. Jack's Supper Club*, 304 Neb. 605, 935 N.W.2d 754 (2019). Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Id.* It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute. *Id.*

*Parks v. Hy-Vee*, 307 Neb. 927, 944-45, 951 N.W.2d 504, 518 (2020). Instead of accepting that the text of these statutes is plain, the opinion of *Edwards v. Douglas County*, 308 Neb. 259, 953 N.W.2d 744 (2021)—on which the majority relies in this case—took, as I have previously observed, a lengthy excursion in statutory interpretation but tellingly omitted the controlling statutory text defining "claim" and the context to which exceptions are applied.

So in the instant case, referring to the complaint, I ask: What is the alleged wrongful act of the State employees which forms the basis for the "claim"? Williams' "claim"

against the State is based on the alleged negligent acts of State employees who, knowing of the safety risk and in contravention of the "keep separate" list, placed Williams and the killer of his brother in the same housing unit. The claim is based on what State employees did in the course of their employment, and no one is claiming in this case that a State employee assaulted Williams. The "claim" was fait accompli before any assaults. The claim did not arise out of the assault; the assault is an intentional tort, but the prior negligence claim is independent of the intentional tort. Nevertheless, the majority persists in following *Moser* and *Edwards*. As in *Moser*, the plaintiff alleges that negligence was committed by a governmental entity and the assault is the subsequent injury or event. In my view, the majority continues to get it backwards; it reasons that the later "assault" which is listed in § 81-8,219(4) led to the earlier negligence claim.

What if Armendariz or his associates stole or damaged Williams' property found in his cell after the authorities ignored the "keep separate" list? Stealing is not listed as an excepted act in § 81-8,219(4). Would the majority reason that the claim of negligently failing to adhere to the safety objectives of the "keep separate" list arose from the subsequent theft and, because theft is not on the list of § 81-8,219(4), that the State is not immune and remains subject to suit? That is, in the majority's view, the Legislature, in enacting § 81-8,219(4), believed that whether the State can be sued for its earlier negligence depends on the fortuitous nature of the crime committed later by the nongovernmental employee. The majority's reasoning is neither warranted by statutory text nor sensible.

Referring to the language and purpose of § 81-8,219(4), I ask: Should a government's liability for its earlier negligent act depend on the type of crime a nongovernmental third party later commits? Does that make the government's act nontortious? What is the incentive for adhering to inmate safety precautions if failure to do so can be obliterated by the later criminal act of a nongovernmental third party? Is the reading of the statute by the majority what the Legislature intended?

We recently stated that "[i]t is a court's duty to discover, if possible, legislative intent from the statute itself." *In re Guardianship & Conservatorship of J.F.*, 307 Neb. 452, 458, 949 N.W.2d 496, 502 (2020). And we have long held that it is presumed that the Legislature intended a sensible, rather than an absurd, result. *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998). We have specifically applied the preference for a sensible reading to the PSTCA, e.g., *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015), and we should also give the STCA a sensible reading. With the foregoing in mind, I respectfully believe that the interpretation by the majority of the intentional tort exception in the STCA is neither supported by the text of the statute, sensible, nor intended by the Legislature. Instead, it is an unwarranted judicial expansion of a statutory exception.

The majority's reading strays from the text of § 81-8,219(4), strays from the principles of statutory construction in general, and, in the sovereign immunity jurisprudence in particular, strays from the reading of the same language by the U.S. Supreme Court, strays from a sensible reading of § 81-8,219(4), and strays from the fact the Legislature since 2007 has long acquiesced in this court's reading of the assault exception in *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007). I respectfully disagree with the majority's description of its foray in *Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020), in 2020 as "settled precedent."

As I stated in my dissent in *Moser*:

The *Sheridan* [*v. United States*, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988),] Court held that "in at least some situations[,] the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur." 487 U.S. at 398. Contrary to the majority's view to the effect that the State's alleged negligence arises from the assault, the roots of the assault lie in the State's own alleged negligence. So it would be

contrary to the language of the [STCA] and unsound to afford immunity to an alleged breach of duty by a governmental entity because an intervening event, the very anticipation of which made that governmental entity's conduct negligent, has brought about the expected harm. *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986).

307 Neb. at 44, 948 N.W.2d at 211 (Miller-Lerman, J., dissenting).

*The Consideration of the Legislature Is Invited.*

After having judicially expanded the statutory intentional tort exception, the majority in *Edwards v. Douglas County*, 308 Neb. 259, 953 N.W.2d 744 (2021), found itself in the awkward position of entreating the Legislature to consider restoration of the intentional tort assault exception to the status quo ante *Moser*. E.g., see 2021 Neb. Laws, L.B. 54, pending in the Legislature. The majority again today refers this matter to the Legislature. I too welcome consideration by the Legislature.

The majority view developed in *Moser*, in *Edwards*, and again today has broad consequences. In this case, the State allegedly violated the "keep separate" list designed to keep inmates separated and safe. I respectfully dissent from the majority's reasoning in *Moser*, *Edwards*, and the instant case. Under the majority's reasoning, if the State negligently violates a "keep separate" directive effectively promoting a cage match between inmates and the expected assault ensues, the State is immune from suit; I dissent.